UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DALE D. BOOKWALTER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 4:17-CV-2333-SPM |
| | ) | |
| DAVID VANDERGRIFF, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

This matter is before the undersigned on the petition of Missouri state prisoner Dale D.

Bookwalter ("Petitioner") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The parties

have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to

28 U.S.C. § 636(c)(1). (Doc. 5). For the following reasons, the petition will be denied.

### I.   FACTUAL BACKGROUND

The Missouri Court of Appeals summarized the facts presented at Petitioner's trial as

follows:

> In mid-August 2008, Defendant's son ("Victim") was living with Defendant
> in a house where several other persons were also living. Defendant and Victim's
> mother ("Mother") had divorced a few months earlier and shared custody of Victim.
> At some point, Mother moved out of the house and left Victim with Defendant.
> Victim remained with Defendant until he left to live with Mother after a storm
> caused a power loss at Defendant's home.
>
> At some point between mid-August 2008 and when Victim left to live with
> Mother on September 14 or 15, 2008, an adult, male friend who was living with
> Defendant woke Victim during the night and told Victim to go to Defendant's
> room. Once Victim did so, the men told Victim to take his boxer shorts off.
> Defendant then put his penis in Victim's anus and "moved around." Victim told
> Defendant to stop, but Defendant did not stop. Defendant eventually told Victim to

1

go back to bed. A few nights later, Victim was again awakened by Defendant's friend and told to go to Defendant's room. On that occasion, after Defendant told Victim to take of his clothes, Defendant's friend "did the same thing [ ]" to Victim. Victim testified that Defendant had a gun this time and told Victim that he would hurt Victim and his family if he told anyone. Victim testified that "this" happened again on six-to-eight other occasions while he was still living with Defendant.

Victim's special education teacher noticed changes in Victim's behavior toward the end of August. Previously, "he was very well-behaved." She noticed that Victim began to have trouble getting along with others, he "cried a lot," had "outbursts" and began to suffer from "very, very bad hygiene."

In his opening statement to the jury, the prosecutor stated that Victim was "a 13-year-old boy" and in his closing argument that Victim "was less than 13 when it happened," and "[a] 12-year-old boy." Although Victim, Mother, Victim's teacher, and Victim's half-brother ("Half–Brother") all testified at trial, none of them were asked when Victim was born or even how old he was. Victim's teacher testified that Victim was a seventh-grader when school started around August 15, 2008. Mother testified that she had two children besides Victim: Half–Brother— who was fifteen years old—and Victim's sister ("Sister")—who was fourteen years old—at the time the case was tried on June 11, 2009. Defendant was the father of Sister but was not the father of Half–Brother.

*State v. Bookwalter*, 326 S.W.3d 530, 531-32 (Mo. Ct. App. 2010).

On June 11, 2009, following a jury trial, Petitioner was convicted of statutory sodomy in the first degree – deviate sexual intercourse with a person less than 14 years old, Mo. Rev. Stat. § 566.062, in the Circuit Court of Stoddard County, Missouri. Resp't Ex. B, at 41.[1] On August 5, 2009, the trial court sentenced Petitioner to 15 years in prison. *Id.* In his direct appeal, Petitioner asserted one ground for relief: that there was insufficient evidence from which a juror could find beyond a reasonable doubt that Victim was less than fourteen years old during the charged period. Resp't Ex. C, at 12. The Missouri Court of Appeals considered this ground on the merits and denied it, affirming the conviction. *Bookwalter*, 326 S.W.3d at 530-37. On March 2, 2011,

---

[1] For most of Respondent's exhibits, the Court uses the page numbers of the electronically filed documents in this case. However, for Respondent's Exhibit A, the trial transcript, the Court cites to the numbered transcript pages.

Petitioner filed a *pro se* motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15. Resp't Ex. F. On June 15, 2011, through appointed counsel, Petitioner filed an amended motion for post-conviction relief, raising seven grounds for relief. Resp't Ex. G. Petitioner raised one claim of prosecutorial misconduct, five claims of ineffective assistance of trial counsel, and one claim of ineffective assistance of appellate counsel. *Id.* at 4-11.

On August 28, 2017, while his motion for post-conviction relief was still pending, Petitioner filed a petition for writ of habeas corpus in this Court. (Doc. 1). The Court appointed counsel for Petitioner, and through appointed counsel, Petitioner filed an amended petition. (Doc. 21). On April 27, 2018, Respondent filed a motion to stay this case while Petitioner exhausted his remedies in the state post-conviction action. (Doc. 29). On June 29, 2018, the Court entered an order staying the case and holding the petition in abeyance so that Petitioner could exhaust his remedies in state court. (Doc. 40). The parties provided the Court with periodic status updates.

After allowing Petitioner to take several depositions, the motion court denied all of Petitioner's claims. Resp't Ex. P, at 248-72. Petitioner appealed the denial, raising two issues: (1) that trial counsel, David Newell, was ineffective for failing to investigate and call Curtis McBride, an individual to which Victim confided that his father did not sexually abuse him, to testify at trial; and (2) that Petitioner's direct appeal counsel was ineffective for failing to assert on direct appeal that the trial court had plainly erred in submitting a verdict directing instruction (Instruction No. 5) that did not provide the specific act of statutory sodomy the jury had to agree that Petitioner had committed. Resp't Ex. L, at 18-19. The Missouri Court of Appeals denied both claims. As to the first claim, the Missouri Court of Appeals found that the ineffective assistance claim raised on appeal was materially different from the claim asserted in the amended motion for post-conviction relief and ruled on by the motion court, leaving nothing for appellate review. Resp't Ex. O, at 2.

As to the second claim, the Missouri Court of Appeals affirmed the motion court's holding on the merits. *Id.* at 2-3.

On December 8, 2020, Respondent filed a memorandum with the Court stating that Petitioner's state court post-conviction proceedings had been concluded. (Doc. 99). The Court lifted the stay in this case and granted Petitioner leave to file an amended petition. (Doc. 108). Petitioner filed a Second Amended Petition for writ of habeas corpus. (Doc. 117). In that petition, Petitioner asserts three grounds for relief: (1) that there was insufficient evidence to demonstrate that Petitioner was guilty of statutory sodomy in the first degree; (2) that Petitioner's direct appeal counsel was ineffective based on counsel's failure to argue that the trial court had plainly erred in submitting to the jury a verdict director on statutory sodomy in the first degree that did not specify which act of anal sodomy Petitioner had committed; and (3) that Petitioner's trial counsel was ineffective based on counsel's failure to investigate and call at trial Curtis McBride, an individual to which Petitioner's son confided that his father had not sexually abused him.

## II.   LEGAL STANDARDS

### A.  Legal Standard for Reviewing Claims on the Merits

A district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C § 2254(a). Federal habeas review exists "as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Woods v. Donald*, 575 U.S. 312, 316 (2015) (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)). Accordingly, "[i]n the habeas setting, a federal court is bound by the AEDPA [the Antiterrorism and Effective Death Penalty Act] to exercise only limited and deferential review of underlying state court

decisions." *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003) (citing 28 U.S.C. § 2254). A federal court may not grant habeas relief to a state prisoner with respect to any claim that was adjudicated on the merits in the state court proceedings unless the state court's adjudication of a claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court decision is "contrary to" clearly established Supreme Court precedents "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Brown v. Payton*, 544 U.S. 133, 141 (2005). A state court decision involves an "unreasonable application" of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Williams*, 529 U.S. at 407-08; *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "Finally, a state court decision involves an unreasonable determination of the facts in light of the evidence presented in state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Jones v. Luebbers*, 359 F.3d 1005, 1011 (8th Cir. 2004) (citations and internal quotation marks omitted).

### B.  Legal Standard for Procedurally Defaulted Claims

To preserve a claim for federal habeas review, "a state habeas petitioner must present that claim to the state court and allow that court an opportunity to address his claim." *Moore-El v. Luebbers*, 446 F.3d 890, 896 (8th Cir. 2006) (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32

(1991)). "Where a petitioner fails to follow applicable state procedural rules, any claims not properly raised before the state court are procedurally defaulted." *Id.* The federal habeas court will consider a procedurally defaulted claim "only where the petitioner can establish either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice." *Id.* (citing *Sawyer v. Whitley*, 505 U.S. 333, 338-39 (1992)). To demonstrate cause, a petitioner must show that "some objective factor external to the defense impeded [the petitioner's] efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish prejudice, a petitioner must demonstrate that the claimed errors "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982); *accord Ivy v. Caspari*, 173 F.3d 1136, 1141 (8th Cir. 1999). Lastly, in order to assert the fundamental miscarriage of justice exception, a petitioner must "present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted." *Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2011) (quoting *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006)).

## III.   DISCUSSION

### A.  Ground One: There was insufficient evidence to demonstrate that Petitioner was guilty of statutory sodomy in the first degree

In Ground One, Petitioner argues that there was insufficient evidence presented at trial to demonstrate that he was guilty of statutory sodomy in the first degree. Specifically, Petitioner argues that the state did not prove beyond a reasonable doubt that Victim was less than fourteen years old when the alleged abuse occurred.[2] Petitioner states that although Victim and his mother

---

[2] The jury was instructed that to find Petitioner guilty, it must find beyond a reasonable doubt that "the charged conduct occurred between August 20th and September 18, 2008" and that "at the time [Victim] was less than fourteen years old . . . .". Resp't Ex. B, at 33; *Bookwalte*r, 326 S.W. at 533.

testified at trial, they did not testify about his age at the time of the alleged incident, did not testify about his birth date, and did not testify about his age at the time of trial. Petitioner states that the only mentions of Victim's age at trial were the prosecutor's statement during opening argument that Victim was now thirteen years old and the prosecutor's statement during closing that Victim was twelve years old when the alleged events occurred; Petitioner argues that neither of those statements were evidence that could be considered by the jury. Petitioner raised this claim in his direct appeal, and the Missouri Court of Appeals rejected it on the merits.

"[T]he Due Process clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 360 (1970). In *Jackson v. Virginia*, the Supreme Court held that a habeas petitioner challenging a state criminal conviction "is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." 443 U.S. 307, 324. In reviewing a *Jackson* challenge to the sufficiency of evidence, the court does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt"; instead, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (internal quotation marks omitted). *Accord Coleman v. Johnson*, 566 U.S. 650, 654 (2012). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* "[T]he only question under *Jackson* is whether [the jury's] finding was so insupportable as to fall below the threshold of bare rationality." *Coleman*, 566 U.S. at 656.

The Supreme Court has noted that "*Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Id.* at 651. First, in the direct appeal, the state appellate court must defer to the jury's conclusions about the evidence presented at trial. *Id.* Second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Id.* (quoting *Cavazos*, 565 U.S. at 2 (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)). *See also Parker v. Matthews*, 567 U.S. 37, 43 (discussing the "twice-deferential standard" that applies to habeas claims based on *Jackson*).

In considering Petitioner's claim that the evidence was insufficient to support his conviction, the Missouri Court of Appeals correctly noted that under Missouri law, "A person commits the crime of statutory sodomy in the first degree if he has deviate sexual intercourse with another person who is less than fourteen years old" and that the Due Process clause requires proof beyond a reasonable doubt of every fact necessary to constitute the charged crime for an accused to be convicted. *Bookwalter*, 326 S.W.3d at 533 (citing Mo. Rev. Stat. § 566.062.1 & *In re Winship*, 397 U.S. at 364). Although the court did not specifically cite *Jackson*, it correctly set forth the *Jackson* standard for assessing challenges to the sufficiency of the evidence, stating that its task was "to determine whether there is sufficient evidence from which a reasonable juror could have found the defendant guilty beyond a reasonable doubt." *Bookwalter*, 326 S.W.3d at 532.

Turning to the evidence presented at trial, the Missouri Court of Appeals recognized that the prosecutor's statements about Victim's age "were, of course, not evidence." *Id.* at 533. The court stated that there were only three pieces of evidence relating to Victim's age presented at trial: Victim's physical appearance and manner, Victim's grade level at the time the offense was

committed; and the ages and dates of Victim's siblings at the time of trial.[3] *Id.* at 534. The Missouri Court of Appeals then discussed each of those pieces of evidence in some detail, noting the strengths and weaknesses of each. *Id.* at 534-37. The Missouri Court of Appeals discussed the fact that because Victim testified, the jury was able to observe not only appearance but also "was also able to gauge Victim's age based on his manner while testifying and the amount of sophistication (or lack thereof) he displayed when answering questions put to him by both the prosecutor and defense counsel." *Id.* at 534. With regard to Victim's grade in school, the court acknowledged that "[w]ether a student just entering the seventh grade is less than fourteen years old might well depend on the age at which he started school and whether he had ever skipped or repeated any grades," but it also emphasized that  jury knew Victim's specific grade and not merely what level of school (such as high school or middle school) he was in. *Id.* Finally, with regard to the ages of the victim's siblings at trial, the Missouri Court of Appeals noted that the jury had heard testimony that Victim's older half-brother (with whom he shared a mother) was fifteen years old, and that Victim's sister was fourteen years old, at the time of trial on June 11, 2009. *Id.* The court then created a chart showing the range of the children's possible birth dates and the resulting possible ages of Victim at the time of the offense. *Id.* at 535. It found that under most possible scenarios, Victim would have been under fourteen at the time of the charged conduct; however, because there were some scenarios wherein Victim would have been older, the court expressed skepticism about whether this evidence alone would have been sufficient for a reasonable juror to make a finding regarding Victim's age beyond a reasonable doubt. *Id.* at 535-37. It concluded that it need not

---

[3] As the Missouri Court of Appeals noted, Victim's mother testified at a pretrial hearing pursuant to Mo. Rev. Stat. 491.075, held on Thursday, May 21, 2009, that Victim was thirteen years old, but that testimony was never presented to the jury. *Bookwalter*, 326 S.W.3d 3d at 531 n.2; Resp't Ex. A, Tr. 7.

reach that question, however, because it was "persuaded that the combination of 1) the jury's ability to view first-hand Victim's physical appearance and manner while testifying at trial; 2) the fact that Victim was just entering seventh grade at the time of the charged conduct; and 3) the probability that Victim was less than fourteen based on the age of his siblings at trial was sufficient evidence from which a reasonable juror could be firmly convinced that Victim was less than fourteen years old at the time of the charged conduct." *Id.* at 537. The court did note that it was a "close question." *Id.* at 531.

After reviewing the record, this Court is not convinced that it would have reached the same conclusion as did the Missouri Court of Appeals. However, under the "twice-deferential" standard this Court must apply, the Court cannot say that the state court's decision was "objectively unreasonable." The state court's discussion of the facts that were presented to the jury is well supported by the record, which shows that the Victim testified and the jury was able to view and assess his manner and appearance (Tr. 88-103); that Victim was in the beginning of seventh grade when the abuse occurred (Tr. 132-36); and that Victim had an older half-brother (with the same mother) who was fifteen and a sister who was fourteen (Tr. 108, 117, 119). The Court cannot say that the state court's conclusion, based on this evidence, was based on an unreasonable determination of the facts. The state court also identified the appropriate *Jackson* standard, accurately and carefully reviewed the evidence in light of the elements of the crime charged, and offered detailed reasons for its conclusion that a reasonable juror could have found beyond a reasonable doubt that Petitioner was under fourteen at the time of the changed conduct. Under the very deferential standards the Court must apply at this stage, the Court cannot find that the state court's determination was contrary to, or an unreasonable application of, clearly established federal law.

For all of the above reasons, Ground One will be denied.

### B. Ground Two: Ineffective assistance of appellate counsel—failure to argue error in submission of jury instruction

In Ground Two, Petitioner argues that his direct appeal counsel was ineffective based on appellate counsel's failure to argue that the trial court had plainly erred in submitting to the jury a verdict director on statutory sodomy in the first degree that did not specify which act of anal sodomy—among several mentioned at trial—Petitioner had committed. Petitioner argues that the instruction submitted allowed for the possibility that the jurors did not unanimously find Petitioner guilty on any particular act of sodomy, in violation of *State v. Celis-Garcia*, 344 S.W.3d 150, 158 (Mo. 2011) (holding that in a "multiple acts" case, the jury instructions "must describe the separate criminal acts with specificity" and "must instruct the jury to agree unanimously on at least one of the specific criminal acts described in the verdict director"). Petitioner raised this claim in his amended motion for post-conviction relief and on appeal from the denial of that motion, and the state court denied the claims on the merits.

The facts relevant to this claim are as follows. At trial, Victim testified as to two specific instances of anal sodomy and alluded to six or seven other, similar incidents. Victim testified about one incident in which Chris Renn, who was staying with Victim and Petitioner, woke Victim up and told him to go to Petitioner's room, at which time Petitioner "put his thing in my butt." Resp't Ex. A, Tr. 89-91. Victim then testified that a few nights later, Chris woke him up again and took him to Petitioner's room, where Petitioner forced Victim at gunpoint to remove his clothing, and then Chris put his penis in Petitioner's bottom. Resp't Ex. A, Tr. 92-95. He testified that this happened again, six, seven, or eight times. Resp't Ex. A, Tr. 95-96. At the end of the testimony and argument, the jury instructions included Instruction No. 5, which stated:

A person is responsible for his own conduct and he is also responsible for the conduct of other persons committing an offense if he acts with the other persons with the common purpose of committing that offense or if, for the purpose of committing that offense, he aids or encourages the other persons in committing it.

If you find and believe from the evidence beyond a reasonable doubt:

First, between the dates of August 20th and September 18th, 2008, in the County of Dunklin, State of Missouri, the defendant or Chris Renn inserted his penis into the anus of Dale Bookwalter, Jr., and

Second, that such conduct constituted deviate sexual intercourse, and

Third, that at the time Dale Bookwalter, Jr. was less than fourteen years old,

then you are instructed that the offense of statutory sodomy in the first degree has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

Fourth, that with the purpose of promoting or furthering the commission of that statutory sodomy the first degree, the defendant acted together with or aided or encouraged Chris Renn in committing the offense,

then you will find the defendant guilty under Count I of statutory sodomy in the first degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of the propositions, you must find the defendant not guilty of that offense.

As used in this instruction, the term "deviate sexual intercourse" means any act involving the genitals of one person and the hand, mouth, lounge [sic], or anus of another person or a sexual act involving the penetration, however slight, of the male or female sex organ or the anus by a finger, instrument or object done for the purpose of arousing or gratifying the sexual desire of any person.

Resp't Ex. B, at 33. Trial counsel did not object to this instruction on the basis that it denied Petitioner a unanimous jury verdict, and Petitioner's appellate counsel did not raise the issue on appeal. In the post-conviction proceedings, Petitioner's appellate counsel testified that he was not sure why he did not raise this issue on appeal, and that he could only speculate. Resp't Ex. K, at 23-24. He did not recall the *Celis-Garcia* case or what the law was on the issue, and he did not

remember whether other people in his office were raising similar issues. *Id.* at 24-25. He also testified that the instructional error was not preserved. *Id.* at 27. He testified that although the fact that it was not preserved did not automatically mean he would not raise it on appeal, it definitely made it much less appealing as a claim. *Id.* at 28.

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984). This right applies through direct appeal. *See Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985). To show ineffective assistance of counsel, a petitioner must show both that "[his] counsel's performance was deficient" and that "the deficient performance prejudiced [his] defense." *Strickland*, 466 U.S. at 687; *see also Paulson v. Newton Corr. Facility*, 773 F.3d 901, 904 (8th Cir. 2014). To show deficient performance, Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "Judicial scrutiny of counsel's performance must be highly deferential," and Petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689 (citation and internal quotation marks omitted). To show prejudice, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

When an ineffective assistance claim has been addressed by the state court, this Court must bear in mind that "[t]aken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (quoting *Cullen v. Pinholste*r, 563 U.S. 170, 201 (2011)). In the context of a habeas claim, it is not sufficient for a

petitioner to "show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance." *Bell v. Cone*, 535 U.S. 685, 698-99 (2002). "Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.* at 699.

In considering this claim, the motion court recognized that *Strickland* provided the governing law, and it found neither prong of *Strickland* satisfied. Resp't Ex. P, at 253, 270-71. It noted, *inter alia*, that *Celis-Garcia* was decided after the appellate brief was filed; that appellate counsel did not recall why he did not raise the issue in this case, and that appellate counsel did not recall whether anyone else in his office had raised this issue. *Id.* at 270. The motion court also noted that appellate counsel testified that although unpreserved instructional errors may be raised on appeal, they are much less appealing as grounds for appeal. *Id.* The court found, "[i]t is apparent appellate counsel 'winnowed out' arguments to present the single argument for appeal." *Id.* The court also found that Petitioner had failed to show that counsel's alleged error was so obvious that a competent and effective lawyer would have asserted and recognized it, and that Petitioner had failed to demonstrate that had Petitioner raised the error, there was a reasonable probability that the outcome of the appeal would have been different. *Id.* at 270-71.

In reviewing the claim on appeal, Missouri Court of Appeals also properly recognized that *Strickland* provided the governing law, and it affirmed the decision of the motion court denying the motion. Resp't Ex. O, at 2-3. The court noted that *Celis-Garcia* was decided a year after Petitioner's appellate brief was filed, and six months after the mandate was issued on the decision affirming Petitioner's conviction, and it stated that the failure to anticipate a change in the law does not constitute ineffective assistance of counsel. *Id.* at 3. The court further stated that even if the principles articulated in *Celis-Garcia* were present in other cases, the legal landscape prior to

*Celis-Garcia* was not so clear that Petitioner's counsel exhibited deficient performance by failing to raise a claim on appeal based on those principles. *Id.*

After review of the record, the Court finds that the Missouri Court of Appeals' rejection of this claim was not contrary to, or an unreasonable application of, *Strickland*, nor was it based on an unreasonable determination of the facts. The state court identified *Strickland* as the appropriate standard and reasonably applied that standard, finding that under *Strickland*'s deferential standards, it was not deficient performance for appellate counsel not to raise a claim based on a case that had not yet been decided. *See Johnson v. Armontrout*, 923 F.2d 107, 108 (8th Cir. 1991) ("[C]ounsel's failure to anticipate a change in existing law is not ineffective assistance of counsel.").

Moreover, in the context of evaluating appellate counsel's performance, the Eighth Circuit has noted that "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal." *United States v. Brown*, 528 F.3d 1030, 1033 (8th Cir. 2008) (quoting *Jones v. Barnes*, 463 U.S. 745, 751 (1983)). Therefore, absent contrary evidence, the Court "assume[s] that appellate counsel's failure to raise a claim was an exercise of sound appellate strategy.'" *Brown*, 528 F.3d at 1033 (quoting *Roe v. Delo*, 160 F.3d 416, 418 (8th Cir. 1998) (quotation omitted). The Eighth Circuit has also explained:

> When appellate counsel competently asserts some claims on a defendant's behalf, it is difficult to sustain a[n] ineffective assistance claim based on allegations that counsel was deficient for failing to assert some other claims. Because one of appellate counsel's important duties is to focus on those arguments that are most likely to succeed, counsel will not be held to be ineffective for failure to raise every conceivable issue. Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.

*Link v. Luebbers*, 469 F.3d 1197, 1205 (8th Cir. 2006) (quotation marks and citations omitted). *See also Smith v. Robbins*, 528 U.S. 259, 288 (2000) ("[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal.") (citing *Jones*, 463 U.S. 745).

Here, the claim Petitioner's appellate counsel did assert—that there was insufficient evidence to support a finding that the victim was under fourteen—was quite strong, and presented the Missouri Court of Appeals with what it called a "close question." Petitioner has not established that it was an unreasonable decision for appellate counsel to focus on that issue rather than on the unpreserved jury instruction error issue.

Petitioner argues that the decision of the state court involved an unreasonable application of *Strickland* because the state court "ignored established Missouri case law recognizing the need for specificity in verdict directors and the issue of unanimity in multiple act cases that predated *Celis-Garcia*." 2d Am. Pet'n, Doc. 117, at 22 (citing Missouri cases). But "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (internal quotation marks omitted). *See also Schleeper v. Groose*, 36 F.3d 735, 737 (8th Cir. 1994) ("A federal court may not re-examine a state court's interpretation and application of state law.").[4]

---

[4] Even if the Court were permitted to second-guess the Missouri Court of Appeals' assessment of Missouri law, the Court does not find that assessment unreasonable. As Respondent acknowledges, the Missouri Supreme Court has found that "*Celis-Garcia* . . . did not constitute a substantive change in the law" and that "[i]n the absence of reasonable trial strategy, trial counsel's failure to object to the insufficiently specific verdict directors" in a multiple-acts case could constitute ineffective assistance of counsel even for a trial that occurred before *Celis-Garcia* was decided. *See Hoeber v. State*, 488 S.W.3d 648, 659 (Mo. 2016). Significantly, however, Petitioner is not asserting a claim of ineffective assistance of *trial* counsel, but rather a claim of ineffective assistance of *appellate* counsel based on failure to assert an unpreserved error on appeal. As discussed *supra*, evaluating a claim that appellate counsel was ineffective for failing to raise a

Petitioner also argues that the state court's rejection of this claim was based on an unreasonable determination of the facts, because the motion and appellate courts ignored appellate counsel's post-conviction deposition testimony—in particular, appellate counsel's testimony, when presented with the verdict directing instruction, that he could not tell from the instruction which alleged incident the jury unanimously agreed took place, and appellate counsel's testimony that he could not recall the state of the law at the time he represented Petitioner. Petitioner further argues that appellate counsel did not have a strategic reason for not raising the issue on appeal. The Court finds these arguments unpersuasive. A review of counsel's testimony shows simply that counsel did not recall much, if anything about the case, and was not sure why he did not raise the instructional error on appeal. He also testified that the alleged instructional error had not been preserved, and that although the fact that it had not been preserved did not automatically mean he would not raise it, it did make it "much less appealing" as an issue to raise. In light of his testimony that the instructional error was an unpreserved error on appeal, which was less desirable as an issue to raise, it was reasonable for the motion court to conclude that he was winnowing his arguments on appeal. Moreover, to the extent that both the motion court and appellate court based their decision on the state of the relevant Missouri law at the time of the appeal and what would have been clear to a reasonably competent attorney at the time, appellate counsel's testimony does not undermine that decision at all.

For all of the above reasons, Ground Two will be denied.

---

particular claim on appeal involves different considerations than does evaluating a claim that trial counsel was ineffective.

### C.  Ground Three: Ineffective assistance of trial counsel—failure to investigate and call Curtis McBride

In Ground Three, Petitioner argues that that his trial counsel was ineffective based on counsel's failure to investigate and call at trial Curtis McBride, an individual to which Petitioner's son confided that his father had not sexually abused him. Respondent argues that this claim has been procedurally defaulted, because although Petitioner raised the claim in his post-conviction appeal, the Missouri Court of Appeals found that the claim he raised in that appeal (and raises now) was materially different from the claim he raised in his amended motion for post-conviction relief. Resp't Ex. O, at 2. Petitioner does not challenge Respondent's assertion that the claim has been procedurally defaulted or the Missouri Court of Appeals' determination that Petitioner failed to raise the same claim before the motion court and the Missouri Court of Appeals. The Court finds that the claim has been procedurally defaulted based on Petitioner's failure to properly present the claim in his state post-conviction proceedings. *See Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012) ("In Missouri, "a claim must be presented at each step of the judicial process in order to avoid default.'") (quoting *Jolly v. Gammon*, 28 F.3d 51, 53 (8th Cir. 1994).

As discussed above, a state prisoner can overcome such a procedural default only if he can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. Petitioner asserts that cause for the default exists under *Martinez v. Ryan*, 566 U.S. 1 (2012). In *Martinez*, the Supreme Court found that a defaulted claim of ineffective assistance of trial counsel may be excused if the default was due to ineffective assistance of post-conviction relief counsel. *Id.* at 17. To overcome his procedural default under *Martinez*, Petitioner must show (1) that post-conviction counsel was "ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984)," and (2) "that the underlying

ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.* at 14. As discussed above, to show ineffective assistance of counsel under *Strickland*, Petitioner must show that (1) "[his] counsel's performance was deficient," and (2) "the deficient performance prejudiced [his] defense." 466 U.S. at 687.

The court finds neither prong of the *Martinez* test is satisfied here. With regard to the first prong, the Court finds that post-conviction counsel did not show deficient performance by failing to properly raise this claim before the motion court. Here, Petitioner's post-conviction counsel raised seven grounds for relief in the amended motion for post-conviction relief: one claim of prosecutorial misconduct, five claims of ineffective assistance of trial counsel; and one claim of ineffective assistance of appellate counsel. As was discussed above with respect to appellate counsel, it was not unreasonable for post-conviction counsel to focus on the arguments counsel deemed most likely to succeed rather than raising every conceivable issue. The Court finds nothing in the record to undermine the strong presumption that post-conviction counsel acted within the wide range of reasonable professional assistance in focusing on those claims rather than on the one Petitioner raises now.

With regard to the second prong of *Martinez,* the Court finds that the underlying ineffective assistance of trial counsel claim is not substantial under *Strickland*. Even though this claim was procedurally defaulted, the facts underlying the claim were brought forth in depositions of McBride, Petitioner, and Petitioner's trial counsel that were taken during the state post-conviction proceedings. McBride testified that he had a conversation with Victim, on a camping and fishing trip, wherein Victim told him McBride that his father had not molested him and that someone else had made him say it. Resp't Ex. P, at 201-03. McBride could not recall whether the conversation occurred before or after Petitioner's trial. *Id.* at 203. McBride testified that he did not push the

issue and said he did not want to be involved in any of it, because "it's a messed up family." *Id.* at 203. Petitioner testified that he asked his attorney to investigate or speak to McBride seven or eight months prior to his trial, but his attorney never did. Resp't Ex. P, at 233-34. Petitioner testified that his attorney "just kept putting him off on it" and when asked, said he had not gotten to it yet or that he could not find him yet. *Id*. at 236. However, Petitioner did not testify that he offered trial counsel any information regarding how to find or contact McBride. David Newell, Petitioner's trial counsel, testified that he would have wanted to present evidence such as McBride's if it had some credibility, but that he did not believe that he was given sufficient information to adequately investigate the person's identity or determine who he was. Resp't Ex. J, Tr. 30-31, 39.

Nothing in the evidence presented in the state-post-conviction proceedings suggests that Petitioner's trial counsel was given sufficient information regarding McBride's identity or location to allow counsel to further investigate his possible testimony before trial. Moreover, McBride's testimony does not show that his testimony would have provided Petitioner with a viable defense, given that McBride could not remember if he had the conversation with Petitioner before or after trial and that McBride appeared reluctant to participate in the case. Thus, the Court finds the underlying ineffective assistance of trial counsel claim to be without merit.

Because Petitioner has not established either *Martinez* requirement, and because Petitioner makes no other argument that the procedural default of Ground Three is excused, the Court finds that Ground Three has been procedurally defaulted and must be denied.

## IV.    CONCLUSION

For all of the above reasons, Petitioner is not entitled to federal habeas relief. Under 28 U.S.C. § 2253, an appeal may not be taken to the court of appeals from the final order in a 28 U.S.C. § 2254 proceeding unless a circuit judge or district judge issues a certificate of

appealability. 28 U.S.C. § 2253(c)(1)(A). To grant such a certificate, the judge must find that the Petitioner "has made a substantial showing of the denial of a constitutional right." § 2253(c)(2); *Tiedman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (citation omitted). The Court finds that Petitioner has not made a substantial showing of the denial of a constitutional right, so the Court will not issue a certificate of appealability. Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Dale D. Bookwalter's Second Amended Petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 117) is **DENIED.**

**IT IS FURTHER ORDERED** that this case is **DISMISSED.**

**IT IS FURTHER ORDERED** that no certificate of appealability shall issue because Petitioner has failed to make a substantial showing that he has been denied a constitutional right. 28 U.S.C. § 2253.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 31st day of March, 2022.